Allen, J.
 

 This case arises upon a proceeding in error to review a judgment of the Court of Appeals of Cuyahoga county, Ohio, which affirmed a judgment of the court of common pleas of that county. The case arose out of a crossing accident upon Woodland avenue, in Cleveland, in which David Kovatch, aged nine years, was killed when a freight train was crossing the avenue. The crossing gates were up at the time, due to the fact that the city of Cleveland was excavating for a sewer, and the gates could not be operated. It was the theory of the defendant railway company that plaintiff’s decedent was playing with a wire alongside the moving train, that he tapped the wheels of the passing freight cars, and in some manner was caught by the wire and dragged beneath the wheels of the train. It was the theory of the plaintiff administrator that the decedent was struck by the locomotive while attempting to cross the track, and that the locomotive was crossing Woodland avenue negligently, in violation of law, at a speed prohibited by the city ordinance, and without ringing of bell or sounding of the whistle.
 

 
 *534
 
 There was a sharp conflict in the testimony, and evidence was adduced on both sides tending to prove each of the respective theories. An eye-witness testified that “the engine struck David,” and testimony of one other eye-witness was adduced tending to establish the same fact. We do not discuss this feature of the case, because of the fact that evidence was adduced sustaining every feature of the verdict in favor of the administrator.
 

 The legal question of moment is presented by the admission of certain testimony given at the trial by Calvin Kovatch, the administrator and brother of the decedent. Kovatch stated that at the time of the accident he was sitting on his front porch upon Eighty-Seventh street, some 150 feet away from the scene of the accident. He was asked what first attracted his attention, and he said, “I heard a little girl scream, ‘The engine runned over David.’ ” After certain objections which are not material because the evidence was later admitted the following questions and answers were given:
 

 “Q. When you heard the scream, what did you do, first? A. I looked up, and I saw the engine, just crossing over Woodland Avenue — just across Woodland. * * *
 

 “Q. Then, as you looked up — as you heard the scream and looked up and saw the engine, then what did you do? A. I ran out on Woodland Avenue, ran out to Woodland.
 

 “Q. You ran out to Woodland Avenue? And when you got out to Woodland Avenue, what did you observe? A. I saw this derailer man bringing my brother from the railroad, in his arms.
 
 * * *
 

 “Q. You saw the little girl, did you? A. Yes, I saw the little girl.
 

 
 *535
 
 “Q. Could you judge about how old she was? A. About 5 years old.
 

 “Q. Do you know who she was, at all? A. No. I don’t.
 

 “Q. Now, where was the little girl standing, when you heard the scream? * * *
 

 “The Court: Well, did you see her, at the time she screamed?
 

 “The Witness: No. I did not see her at the time she screamed.
 

 “The Court: Did you see her afterward?
 

 “The Witness: After I got out to Woodland — started out 87th street, I saw her on the corner.”
 

 Thereafter the following question was asked:
 

 “Q. Now,' getting back to the scream that first attracted your attention, I will ask you what you heard the little girl say? * * *
 

 “A. The little girl said, ‘The engine runned over David.’ ”
 

 Exceptions were duly saved to the admission of this testimony, and therefore the direct question confronting us is whether the exclamation of the “little girl” was admissible as part of the
 
 res gestae.
 

 As laid down by Wigmore (3 Wigmore on Evidence [2d Ed.], Section 1750), such declarations are admissible only under the following circumstances:
 

 “(a)
 
 Nature of the occasion.
 
 There must be some
 
 shock, startling enough
 
 to produce this nervous excitement and render the utterance spontaneous and unreflecting. *
 
 * *
 

 “ (b)
 
 Time of the utterance.
 
 The utterance must have been
 
 before there has been time to contrive and misrepresent, i. e.
 
 while the nervous excitement may
 
 *536
 
 be supposed still to dominate and the reflective powers to be yet in abeyance. This limitation is in practice the subject of most of the rulings. * * *
 

 “(c)
 
 Subject of the utterance.
 
 The utterance must
 
 relate to the circumstances of the occurrence preceding it.”
 

 “Upon the ordinary principle applicable to all testimonial evidence, * * * and therefore to Hearsay statements offered under these Exceptions, * * * the declarant must appear to have had
 
 an opportunity to observe personally
 
 the matter of which he speaks. This requirement is in practice usually fulfilled in the case of all declarations otherwise admissible; for they are made by injured persons or others present and concern the circumstances of the injury as observed by them; and thus no occasion arises for calling attention to the requirement. Nevertheless, in an appropriate case, it would without doubt be enforced; for example, if a passenger in a railroad collision should exclaim, ‘The engineer did not reverse the lever,’ or ‘The conductor did not read the train-despatcher’s orders.’ ” Wigmore, Section 1751.
 

 Relying upon this authority, plaintiff in error claims that this admission of the “little girl’s” exclamation constituted prejudicial error. If the statement was incorrectly permitted to go to the jury, there is no doubt that it was prejudicial, for the sharp conflict in the testimony with regard to whether the engine struck David, or whether after the engine had passed David tapped the wheels of the cars with a wire, and hence was drawn into their mechanism by his own negligence, made this statement of the “little girl” have vital bearing upon the major question of fact in the case.
 

 
 *537
 
 The third paragraph of the syllabus in the case of
 
 State
 
 v.
 
 Lasecki,
 
 90 Ohio St., 10, 106 N. E., 660, L. R. A., 1915E, 202, Ann. Cas., 1916C, 1182, reads as follows:
 

 “The doctrine of
 
 res gestae,
 
 as applied to exclamations, should have its limits determined, not by the strict meaning of the word ‘contemporaneous,’ but rather by the causal, logical or psychological relation of such exclamations with the primary facts in controversy. ’ ’
 

 The record shows that there was a shock startling enough to produce a spontaneous utterance. Furthermore, the utterance does relate to the circumstances of the accident. Was the declaration, however, a narrative statement rather than a spontaneous exclamation, uttered while nervous excitement still dominated the little girl? In other words, what was the causal, logical, or psychological relation of the exclamation to the primary facts in controversy? To decide this question, the time of the utterance is of the greatest moment. The testimony of the administrator was that he first heard the little girl scream, “The engine runned over David,” and that then he “looked up” and “saw the engine just crossing Woodland Avenue.” In other words, his testimony is that he saw the engine after he heard the scream. There is testimony in the record to the effect that a pusher engine was attached to the train at the end of the 82 cars, but a reading of the entire testimony shows that Kovatch was speaking of the engine on the front of the train, and not of the pusher engine on the rear. Mrs. Faher expressly limits her testimony that she saw the engine strike David, to the engine “on the front.”
 

 
 *538
 
 There was testimony in the record to the effect that the train was running at about 30 miles per hour, and that the point where the body of David was found was at about the street car tracks in the center of Woodland avenue. Woodland avenue is 45 feet wide from curb to curb.
 

 In view of this testimony, which was evidently believed by the jury, this court must assume that the time of the utterance was practically simultaneous with the time of the accident, and that the statement, so far as the time of making it is concerned, falls within the
 
 res gestae
 
 rule.
 

 The fact that the “little girl” is described as being about 5 years old is not controlling. It was held in
 
 Powell
 
 v.
 
 Gallivan,
 
 44 R. I., 453, 118 A., 769, that statements by a two and one-half year old child, constituting part of the
 
 res gestae,
 
 are admissible, notwithstanding the child was of insufficient age to be sworn.
 

 The same holding was made in
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 Studdard,
 
 34 Ga. App., 570, 130 S. E., 532, as to declarations of a child 4 years old. In this state, the same holding was the basis of the decision in
 
 State
 
 v.
 
 Lasecki, supra.
 

 There is some slight conflict as to whether declarations of bystanders as to the cause of an accident, even though contemporaneous therewith, are admissible. Such declarations made immediately before the accident, if relevant, are generally held to be properly allowed in evidence.
 
 Stoudemire
 
 v.
 
 Davis,
 
 208 Ala., 495, 94 So., 498;
 
 Nahorski
 
 v.
 
 St. Louis Electric Terminal Ry. Co.,
 
 310 Mo., 227, 274 S. W., 1025.
 

 On the other hand, in
 
 Louisville Ry. Co.
 
 v.
 
 Johnson’s Admr.,
 
 131 Ky., 277, 115 S. W., 207, 20 L. R.
 
 *539
 
 A. (N. S.), 133, it was held that declarations of bystanders as to the cause of a pedestrian’s being struck by a street car, although contemporaneous with the accident, are not admissible as part of the
 
 res gestae;
 
 it being the theory of this holding that declarations which constitute part of the
 
 res gestae
 
 must be made by a participant in the occurrence.
 

 A contrary, and from our standpoint a correct, decision is found in the syllabus of
 
 Commonwealth
 
 v.
 
 Gardner,
 
 282 Pa., 458, 128 A., 87. In
 
 State
 
 v.
 
 Lasecki, supra,
 
 it is held that the doctrine of
 
 res gestae
 
 applies equally to participants, bystanders, and persons incompetent to be witnesses.
 

 A more difficult question is whether the statement of a totally unidentified person, with no direct probf of opportunity to observe, may be admitted as part of the
 
 res gestae.
 
 There is no direct testimony to the fact that the little girl on the corner was the little girl who uttered the scream. There is no direct testimony that the little girl actually saw the accident. She may in fact have been told by some one that the engine had run over David. On the other hand, the following facts, as shown by the record, and not disputed, must be taken into consideration in connection with the decision of this phase of the question:
 

 Witnesses for the plaintiff in error concede that there were boys and a little girl near the track at about the time of the accident. Grlaug, the main witness for the plaintiff in error, said that there were a few boys chasing a little girl, and that the little girl was running. He said the little girl ran away. The administrator admitted that he had never before seen the little girl, whom he saw at the
 
 *540
 
 corner immediately after the accident. He said she “looked kind of frightened.” Mary Faher, in addition to testifying that the engine struck David, testified that David was going west on the sidewalk toward the train with other children, and had a piece of jelly bread in his hand; that he “just hopped along like the other children.” It is evident, therefore, that children were in the vicinity of the track, and that one of them was a little girl. A statement of Glaug, put into evidence, made immediately after the accident, showed that he “pulled a little girl out from the path of the engine.”
 

 Under the circumstances, the jury was justified in the inference that a little girl was in the immediate vicinity of the accident, and that she had an opportunity to observe the accident. This was a question of fact in support of which some evidence was adduced.
 

 While there are decisions which run counter to this holding, we think that the weight of authority inclines in the direction of this decision. In
 
 Bibb
 
 v.
 
 State,
 
 83 Tex. Cr. Rep., 616, 205 S. W., 135, the exclamation, “Oh, daddy, why did you do it?” was held to have been inadmissible, where it was not identified except as being in a woman’s voice, and coming from the direction where the killing occurred. A similar holding was made in
 
 Gose, Admx.,
 
 v.
 
 True,
 
 197 Iowa, 1094, 198 N. W., 528, where, the declaration offered was from an unidentified person. However, in
 
 Johnson
 
 v.
 
 St. Paul & Western Coal Co.,
 
 126 Wis., 492, 105 N. W., 1048, an exclamation by some one that, “The hook hit him,” when a boy fell through the hatch of a vessel, was held to be admissible.
 

 
 *541
 
 In
 
 State
 
 v.
 
 Fletcher
 
 (Mo. Sup.), 190 S. W., 317, the exclamation which was allowed in evidence was made by an evidently unidentified bystander, to the effect that, “There is a dead man.”
 

 In
 
 Ford
 
 v.
 
 State,
 
 96 Ark., 582, 132 S. W., 995, evidence was held to be properly offered and received that, at the time of the shooting, the exclamation “Oh, don’t!” was heard from an unidentified person in the immediate vicinity.
 

 A similar holding was made in
 
 Hearne
 
 v.
 
 State,
 
 121 Ark., 460, 181 S. W., 291.
 

 In
 
 Armborst
 
 v.
 
 Cincinnati Traction Co. (C. C.
 
 A.), 25 F. (2d), 240, testimony was given to the effect that an unidentified man, a bystander, picked a passenger up who was thrown down while alighting 'from a street car, and said, “You were throwed off that street car.” This statement was held admissible as part of the
 
 res gestae.
 

 Surely if a murder was committed, and a scream was heard in connection with that murder, which made some statement relative to the commission of the murder, either as to its perpetrator or as to the manner in which it was perpetrated, and if the scream was substantially simultaneous with the happening of the murder, so that there could not have been time to contrive and misrepresent, even though there was no testimony whatever from whom the scream came, such an utterance would be admissible as part of the entire occurrence.
 

 Hence, on reason and authority, we hold that the judgment of the Court of Appeals must be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Kinkade and Day, JJ., concur.