**The STATE of Ohio, Appellee,**

**v.**

**ULIS, Appellant.**

[Cite as *State v. Ulis* (1993), 91 Ohio App.3d 656.]

Court of Appeals of Ohio,
Lucas County.

No. L-90-264.

Decided Nov. 5, 1993.

*Dean Mandross,* for appellee.

*Alan S. Konop,* for appellant.

HANDWORK, Judge.

This appeal was previously considered by this court. *State v. Ulis* (Dec. 13, 1991), Lucas App. No. L–90–264, unreported. Only one assignment of error was presented for consideration. The assignment of error was:

"The trial court erred in denying the defendant-appellant's motion to suppress the testimony of Dr. Terrance Scully as the testimony would be hearsay based on the words of an incompetent declarant and not admissible pursuant to any exception to the hearsay rule and would violate the Rules of Evidence, the Sixth

and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution."

This court never reached the merits of the appeal because we concluded, after careful examination of the procedure in this case, that the ruling complained of related to a motion *in limine,* rather than to a motion to suppress. *Id.* We noted that the Ohio courts of appeals were split on what approach to follow when a no contest plea was entered after a court denied what was in reality a motion *in limine,* but what was treated by both parties and the trial court as a motion to suppress. *Id.* We followed the view that the no contest plea should be vacated and the case should be remanded. *Id.* Because our ruling was in conflict with the approach taken by the Eighth District Court of Appeals of Ohio in *State v. Hall* (1989), 57 Ohio App.3d 144, 567 N.E.2d 305, we certified the appeal to the Supreme Court of Ohio. The Supreme Court of Ohio expanded a previous ruling, in which it declared a challenge to a breathalyzer test in a case for driving under the influence constitutes a motion to suppress which can be appealed after the entry of a no contest plea by the driver, *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32, to encompass situations in which an evidentiary ruling is "capable of determination [before trial] without additional evidence being elicited by either party." *State v. Ulis* (1992), 65 Ohio St.3d 83, 85, 600 N.E.2d 1040, 1042. The Supreme Court of Ohio therefore reversed the judgment of this court and remanded the appeal to this court "to treat the merits of the trial court's decision on appellant's motion to suppress." *Id.* at 86; 600 N.E.2d at 1042. Following the directive given to this court by the Supreme Court of Ohio, we now consider the merits of the assignment of error presented by appellant, Westley Ulis.

To understand the issues raised in the sole assignment of error, it is necessary to first review some of the facts and procedure in this case. On August 6, 1988, a young mother and daughter were murdered in their apartment in Toledo, Ohio. The three-year-old son and brother of the murder victims survived an attempt on his life. Relatives eventually discovered the young boy, who had been locked in the apartment with the dead bodies of his mother and sister. The boy had a shirt tied around his neck, which had been placed there by someone who tried to strangle him. In March 1989, the grand jury for the state of Ohio sitting in Lucas County issued an indictment charging appellant with aggravated murder, attempted murder and attempted rape.[1] All charges related to the murder of the

---

1. The indictment contained six counts. Count 1 was for aggravated murder in violation of R.C. 2903.01(B) and was accompanied by two specifications, pursuant to R.C. 2929.04(A)(5) and 2929.04(A)(7). Count 2 was for aggravated murder in violation of R.C. 2903.01(A) and was accompanied by two specifications, again pursuant to R.C. 2929.04(A)(5) and 2929.-04(A)(7). Count 3 was also for aggravated murder pursuant to R.C. 2903.01(A) and was accompanied by the same two specifications listed in Count 1 and Count 2. Count 4 was for attempted rape pursuant to R.C. 2923.02. Count 5 was for attempted murder pursuant to

mother and sister and to the attempted murder of the young boy which occurred on August 6, 1988. The young boy's father was also charged with the crimes.

The father's case proceeded to trial first. As part of the proceedings in that case a voir dire of the surviving victim was conducted on August 30, 1989, by the Honorable Judge Knepper, who was the trial judge in the young boy's father's trial. Judge Knepper ruled that the child was not competent to testify. However, when the case was tried, the boy's clinical psychologist was allowed to testify about statements the boy made during therapy identifying the perpetrators of the crimes. In an effort to prevent the same testimony from being presented at his trial, appellant filed a pretrial motion to exclude the testimony of the clinical psychologist. Appellant argued that (1) the admission of the testimony in question would be a violation of the Confrontation Clauses of both the federal and state Constitutions; (2) the testimony in question was inadmissible hearsay; (3) the hearsay exception for statements made during the course of medical treatment did not apply because the statements were not made to a physician and because the statements regarding identification of the perpetrators of the crimes were not germane to medical treatment of the boy. The state filed a memorandum in opposition to the motion to suppress in which it argued (1) the clinical psychologist's testimony was admissible pursuant to a then-newly announced rule created by the Supreme Court of Ohio in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, which allowed qualified experts in child abuse to testify about a child's out-of-court statements if there was independent evidence of physical and mental abuse and if there was no apparent motive for the child to fabricate statements; and (2) the statements were admissible pursuant to the medical treatment exception because they were made to the psychologist for purposes of diagnosis and treatment. Appellant then filed a supplemental memorandum in support of his motion to suppress in which he stated: "The State of Ohio and the defense have stipulated to the 'voir dire' examination of * * * [the boy] that was held in Judge Knepper's chamber prior" to the testimony of the clinical psychologist at the trial of the boy's father.

A hearing was conducted by the Honorable Judge Barber, a visiting judge assigned to hear appellant's case, on the motion to suppress. The clinical psychologist testified at the hearing. At the conclusion of the hearing, Judge Barber stated:

"The status of incompetency of * * * [the boy] under Rule 601 cannot be seriously doubted. Judge Knepper's ruling on this issue seems to be persuasive and grounded in fact and circumstance. Even beyond the collateral estoppel, this

---

R.C. 2923.02. Count 6 was for attempted murder pursuant to R.C. 2923.02, and Count 7 was for attempted murder pursuant to R.C. 2923.02.

Court is inclined to agree with Judge Knepper's reading of the transcript and the voir dire process. * * * [The young boy] * * * was incompetent to testify in Court. However, that does not necessarily make the statements themselves incompetent."

Judge Barber then ruled that the psychologist's testimony was admissible pursuant to the rule announced in *State v. Boston,* 46 Ohio St.3d at 126–127, 545 N.E.2d at 1237–1239, and pursuant to the medical treatment exception, Evid.R. 803(4), and the excited utterance exception, Evid.R. 803(2). Appellant's motion to suppress was overruled. Appellant then entered a no contest plea to two counts of aggravated murder and to one count of attempted murder. The court accepted the plea, found appellant guilty and continued the case for sentencing.

Appellant then filed a motion for reconsideration. The court listened to argument presented by counsel in support of or in opposition to the motion for reconsideration. After both sides had argued, Judge Barber stated in pertinent part:

"Well, it appears what I have been talking about from the beginning, what we have all known from the beginning is this is a close question, and the unavailability that exists in this case harks back to the issue of competency, and I think the question, the problem that we have here is that competency is an unreliable term. A person who may be competent for some purposes and not for others [*sic*]. For example, what I gave here, and the earlier ruling which spontaneously came to mind, but it was that if you have a situation where a person may be adjudicated an incompetent person, and yet if that person in a crowded theater yells, 'fire' that statement would probably not be an incompetent statement, especially if in fact there were a fire in the theater.

"Competency is an umbrella term. People may be competent in some occupations but not in others. I am certainly incompetent in running a nuclear power plant of some kind. I don't have any training in that area. I would be incompetent if I would be placed in that position, but I may be competent for other purposes. I certainly have been placed in a position where I am given authority to make a ruling on this case.

"I am persuaded by Mr. Mandross' argument and Mr. Weglian's argument that there are implicit rulings that can be made. I believe that there is an implicit situation, and I make situations and I make that ruling on the basis of * * * [the clinical psychologist's] testimony, that even though * * * [the young boy] was incompetent to testify in Court, I am going to find that implicitly he was able to make just impressions and was able to testify at least to * * * [the clinical psychologist] truthfully.

"Further, during the course of a long therapy, a revealing of various statements over a long period of time, as he reacted to various thoughts, declarations and experiences that were related during the course of that, I feel that as his testimony had sufficient credibility, that they, having been made in the circumstances that they were through * * * [the clinical psychologist], that they are and do meet the tests of truthfulness which will allow them to meet the hearsay exception."

Judge Barber then denied appellant's motion for reconsideration. Appellant received life sentences on each of the two counts of aggravated murder and was sentenced to ten to twenty-five years of imprisonment for the one count of attempted murder. A *nolle prosequi* was entered on all remaining counts and specifications.

We begin by considering appellant's argument that the statements of the child in this case are not admissible pursuant to "any exception to the hearsay rule." Specifically, appellant argues that the statements are not admissible (1) under the medical treatment exception, Evid.R. 803(4); (2) under the excited utterance exception, Evid.R. 803(2); or (3) under the exception announced in *State v. Boston*, 46 Ohio St.3d at 126–127, 545 N.E.2d at 1237–1239, now enacted as Evid.R. 807.

■ Evid.R. 803(4) reads:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(4) *Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

Appellant presents several reasons to support his contention that Evid.R. 803(4) does not apply in this case. First, he argues that since the boy made his statements to a clinical psychologist, a person who is not a medical doctor, the statements cannot be considered as having been made for medical purposes. Second, he argues that there is no showing of the boy's motivation for speaking to the clinical psychologist, undercutting the traditional support for this exception to the hearsay rule, that the declarant is motivated by the desire to receive help and knows appropriate medical help can be given only if truthful statements are made to assist in diagnosis and treatment. Finally, he argues that identification statements are not necessary for diagnosis or medical treatment. None of appellant's arguments is persuasive.

First, this court has previously stated that the spirit and purpose of Evid.R. 803(4) are complied with when a clinical psychologist is allowed to testify about statements a child victim of crime makes during the course of psychological treatment. *State v. McWhite* (1991), 73 Ohio App.3d 323, 597 N.E.2d 168. Second, the clinical psychologist testified that the child always calls him "Doctor" and that the child is aware that talking with the psychologist is a way to help him feel better. The trial court could therefore properly conclude that the child's statements could be admitted under the medical-treatment exception to the hearsay rule. See *State v. Dever* (1992), 64 Ohio St.3d 401, 410–411, 596 N.E.2d 436, 443–445. Finally, the clinical psychologist testified that the identity of the perpetrator was important to discover, because treatment of the child needed to be adjusted to address issues that would arise if the perpetrator was a stranger, versus someone the child knew well. The identity statements were, therefore, pertinent to treatment and were properly admitted under the medical-treatment exception to the hearsay rule. See *id.* at 414, 596 N.E.2d at 446.

Appellant also argues that the child's statements do not constitute excited utterances and should not be admitted pursuant to Evid.R. 803(2). Evid.R. 803(2) reads:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Appellant points out that the child did not make any of the statements the state wishes the clinical psychologist to repeat until several months after the crime occurred. Furthermore, several of the statements were made after stimulus, such as photographs or closed-end questions.

This court has previously noted:

"The admissibility of statements as excited utterances is to be determined by the individual circumstances of each case. There is no strict rule as to the time frame between the startling event and the declaration, the focus of inquiry being rather whether the declarant was still under the influence of the startling event to such an extent that the statement could not have been the product of reflective thought." *State v. Hunt* (1989), 63 Ohio App.3d 471, 477, 579 N.E.2d 272, 275.

We agree with appellant that when the facts of this case are considered, the test of Evid.R. 803(2) is not met. The child's statements are not admissible as excited utterances.

Appellant argues that the statements of the child were not admissible under the hearsay exception announced in *State v. Boston,* 46 Ohio St.3d at 126–127, 545 N.E.2d at 1237–1239. We note that the hearsay exception announced in *State v. Boston* has since been refined and enacted as Evid.R. 807. Evid.R. 807 reads in pertinent part:

"(A) An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual act performed by, with, or on the child *or describing any act of physical violence directed against the child* is not excluded as hearsay under Evid.R. 802 if all of the following apply * * *." (Emphasis added.)

We note that the terms of Evid.R. 807 limit its applicability to situations where the child makes statements about physical violence directed against the child, not about physical violence directed against others while the child was present. Therefore, the only statements of the child which could possibly be admitted pursuant to Evid.R. 807 in this case would be statements he made identifying who attempted to strangle him. However, several of the requirements established in Evid.R. 807 for determining when the statements covered by the rule can be admitted into evidence were not complied with in this case. See Evid.R. 807(A) through (C). Accordingly, this court cannot review specific rulings of the trial court to determine whether any of the child's statements were admissible pursuant to Evid.R. 807 and would have to remand this case for further proceedings to determine whether the evidence is admissible pursuant to Evid.R. 807 if the statements were not already admissible pursuant to Evid.R. 803(4).

■ We next consider appellant's contention that because the child was deemed incompetent, the child's statements cannot be admitted under any hearsay exception. The ruling that the child was incompetent does not prevent the admission of the child's statements pursuant to a hearsay exception for two reasons.

■ First, Judge Barber erroneously believed he was bound by a previous ruling by a different judge in a different case and in a different year, that the child was incompetent to testify. The previous ruling by Judge Knepper was as follows:

"Based on the questions that I asked, I don't think that the witness understands the obligation to tell the truth, nor is he really able to accurately relate recollections of past events or occurrences. Therefore, I would find that he is not competent to testify in this trial."

Evid.R. 601 contains the provisions to which Ohio courts refer when making determinations about a witness's competency. Evid.R. 601 reads in pertinent part:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

When a competency ruling is based upon the first prong of the Evid.R. 601(A) test for competency of children, that the child could not receive "just impressions of the facts and transactions respecting which they are examined," the ruling is binding, as the ability of the child to accurately perceive the events when they occurred will not change or be cured by the passage of time. See, generally, Myers & Perry, Child Witness Law and Practice (1987) 102–109, Sections 3.21–3.22. However, when the ruling is based upon the second part of the test listed in Evid.R. 601(A) relating to determining the competency of a child witness, whether the child can truly relate facts and transactions, it is not binding, as the child's ability to truly relate facts and transactions can change over time, and the competency of the child must be determined at the time of the trial in which the child's testimony is sought. See *State v. Lewis* (1982), 4 Ohio App.3d 275, 277, 4 OBR 494, 496, 448 N.E.2d 487, 489; see, also, Myers & Perry, Child Witness Law and Practice (1987) 102–103, Section 3.21. Thus, Judge Barber never made a proper competency ruling because he never met with the child and never conducted a voir dire to determine the competency of the child at the time of trial.

Second, because the evidence is admissible pursuant to Evid.R. 803(4), competency of a child witness is irrelevant. Ohio courts have previously ruled that Evid.R. 803(4) has no prerequisite of determining whether the declarant is competent to testify. *State v. Miller* (1988), 43 Ohio App.3d 44, 46, 539 N.E.2d 693, 695; *State v. Valdez* (Nov. 29, 1991), Ottawa App. No. 90–OT–014, unreported. Accordingly, the statements of the child could be admitted pursuant to Evid.R. 803(4) in this case, regardless of any ruling on the child's competency.

Appellant's final argument presented under his sole assignment of error is that the admission of the disputed testimony violated his right to confrontation as guaranteed by the United States Constitution and as guaranteed by the Constitution of the state of Ohio.[2] The United States Supreme Court recently ruled that

---

**2.** The Confrontation Clause found in the United States Constitution reads:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

The Confrontation Clause found in the Ohio Constitution reads:

"where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White v. Illinois* (1992), 502 U.S. ——, ——, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 859. The United States Supreme Court then specifically ruled that hearsay admitted as statements made for medical treatment are not excludable "under the aegis of the Confrontation Clause * * *." *Id.* Thus, appellant's right to confrontation as guaranteed by the United States Constitution was not violated in this case.

■ Our analysis is not complete, however, until we consider whether appellant's rights under the Confrontation Clause of the Constitution of the state of Ohio were violated. The Supreme Court of Ohio recently compared the language of the Confrontation Clause found in the United States Constitution with the language of the Confrontation Clause found in the Constitution of the state of Ohio. *State v. Storch* (1993), 66 Ohio St.3d 280, 287–293, 612 N.E.2d 305, 310–315. While *State v. Storch* involved the admission of statements of a young child who was a victim of sex abuse, *id.* at 280–283, 612 N.E.2d at 306–308, we find the discussion of constitutional rights controlling in this case. The Supreme Court of Ohio began its discussion by acknowledging that the United States Supreme Court recently ruled that when evidence is admitted under the medical examination exception to hearsay, there is no obligation to produce the declarant at trial or to make a finding that the witness is unavailable. *Id.* at 290, 612 N.E.2d at 312, citing *White v. Illinois*, 502 U.S. at ——, 112 S.Ct. at 739, 116 L.Ed.2d at 854. The Supreme Court of Ohio then stated:

"[W]e must assume that the United States Supreme Court meant what it said in *White*, even though its current interpretation of the Sixth Amendment right to confrontation provides less protection for the accused than the protection provided by the Sixth Amendment as traditionally construed and by the express words of Section 10, Article I of the Ohio Constitution." *State v. Storch*, 66 Ohio St.3d at 291, 612 N.E.2d at 313.

The Supreme Court of Ohio then stated that evidence admitted pursuant to a firmly rooted hearsay exception "may violate our state constitutional right of confrontation." *Id.* The court explained its conclusion further by stating:

---

" * * * In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court. * * * "

"We note the requirement clearly set forth in Section 10, Article I, that an accused 'meet the witnesses face to face.' Section 10, Article I goes on to state:

" '[B]ut provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court.'

"We do not construe this latter part of Section 10, Article I to be the only alternative to in-court testimony but do consider it to mean that the circumstances under which extrajudicial statements can be admitted into evidence are few. * * * We construe the right of confrontation contained in Section 10, Article I to require live testimony where reasonably possible. * * * [T]he presumption mandated by Section 10, Article I is that a child will be required in most circumstances to testify 'face to face' with the individual being accused." *Id.,* 66 Ohio St.3d at 292–293, 612 N.E.2d at 314–315.

The *Storch* court then noted that in the case it was reviewing, "No attempt was made to bring the child to court or to bring the court to the child to gain an unbiased view of whether the child was capable of testifying." *Id.* at 293–294, 612 N.E.2d at 315. The *Storch* court stated that the trial court improperly relied upon a social worker's assessment of the child's ability to testify. *Id.* at 294, 612 N.E.2d at 315. The *Storch* court affirmed this court's earlier reversal of the case and remanded the case for further proceedings. *Id.* at 295, 612 N.E.2d at 316.

Following the reasoning of the Supreme Court of Ohio as announced in *State v. Storch,* we conclude that appellant was denied his rights under Section 10, Article I of the Constitution of the state of Ohio. The trial court in this case improperly relied upon the earlier competency proceedings conducted by a different judge in a different case, and improperly relied upon the opinion of the clinical psychologist regarding the ability of the young boy in this case to testify. The court had an obligation to personally observe the child and to reach an unbiased decision regarding whether the child was capable of testifying.

Accordingly, appellant's sole assignment of error is well taken to the extent that Section 10, Article I of the Ohio Constitution was violated in this case.

The judgment of the Lucas County Court of Common Pleas is reversed and this case is remanded for further proceedings. Appellee is ordered to pay the costs of this appeal.

*Judgment reversed*
*and cause remanded.*

GLASSER, P.J., concurs.

ABOOD, J., concurs in judgment only.