DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas wherein appellant, Charles Johnson, was found guilty of the unlawful possession of a dangerous ordnance, a violation of R.C. 2923.17(A) and (D), a felony of the fifth degree, and guilty of illegal possession of a firearm in a liquor permit premises, a violation of R.C. 2923.121, which is also a felony of the fifth degree. The trial court sentenced appellant to 11 months in prison on each conviction; the sentences are to be served concurrently to each other. Appellant appeals, and sets forth the following assignments of error:
 {¶ 2} "The trial court erred in admitting hearsay statements of two unidentified declarants despite the lack of foundation. The record reveals no basis on which the trial court could reasonably have concluded that the declarants had personal knowledge.
 {¶ 3} "The trial court erred in admitting the hearsay statements of the unidentified declarants because, in violation of the Ohio Constitution, Art I, Section 10, the trial court admitted the hearsay even though the state failed to lay a foundation on which the court could have concluded that the declarants were not reasonably available.
 {¶ 4} "In admitting the statements of the two unidentified declarants, the trial court denied the accused the right to confront and cross-examine his accusers in violation of the Confrontation Clause of the United States Constitution, Amend. VI."
 {¶ 5} The facts dispositive of appellant's assignments of error are as follows.
 {¶ 6} At some time between 12:00 a.m. and 1:00 a.m. on the morning of June 11, 2004, Officers Michael Greenwood and Erik Kenney of the Toledo Police Department were ticketing motor vehicles that were illegally parked outside Janet's Old School Bar Grill. The officers were sitting inside their patrol vehicle writing out tickets when "several people came running out of the bar." A woman ran up to Officer Kenney's side of the vehicle. She told the officer that there was "a male in the bar with a yellow fleece on and he's got a shotgun." The woman was described as "panicky," "excited" and talking "loud and fast." While Kenney was listening to the woman, a man ran up to Greenwood's side of the vehicle and told him that the "bouncer's pointing a shotgun at people." The male was "a little more calm," but told Greenwood that he needed to get in there.
 {¶ 7} Greenwood testified that some of the people who came streaming out of the bar were yelling and "saying stuff about somebody in the bar having a gun." The officers immediately left their vehicle and entered the bar, where Officer Greenwood observed appellant, who was wearing a yellow fleece vest, as he was entering the men's rest room. The officer immediately followed appellant, and when he peeked around the wall, he saw appellant in the act of closing a vanity door. After handcuffing appellant and having Officer Kenney watch him, Greenwood opened the vanity door and found a 12 gauge sawed-off shotgun inside that had one shell in it. The officer testified, however, that he never saw appellant with the sawed-off shotgun in his possession.
 {¶ 8} In the meantime, Officer Kenney did a "pat down" of appellant and found three shotgun shells in one of his pockets. The shells in appellant's pocket and the shell in the shotgun matched. Kenney also testified that he remembered that there were at least three different rooms in the bar. These included a room with a pool table, a bar area, and a third area that he did not enter. According to Officer Kenney, this latter was the area where his partner located appellant. Kenney indicated that several, approximately 15, people were still in the bar during the officers' search. Again, this officer did not see appellant with a sawed-off shotgun. Furthermore, testing failed to identify any fingerprints on the shotgun itself.
 {¶ 9} Appellant testified on his own behalf. He stated that he had been one of the bouncers at the bar for about seven months. Appellant further asserted that he was very busy on the evening of June 10, 2004 and the morning of June 11, 2004 because he was the only bouncer working during that period. He claimed that he did not carry a gun and had not seen anyone in the bar wielding a shotgun. Appellant also maintained that he was unaware of the fact that people were leaving the bar because he was in the bathroom picking up shotgun shells that some "boys" left there. He denied ever carrying a gun of any kind and swore that he had not seen anyone in the bar carrying a shotgun. Appellant further testified that he was leaving the bathroom in order to give the shotgun shells that he found to the owner of the bar when Officer Greenwood stopped him.
 {¶ 10} In his first assignment of error, appellant contends that the state failed to prove, beyond a reasonable doubt, that he violated R.C. 2923.17(A) and (D) and R.C. 2923.121. Appellant bases this contention on the fact that the only evidence offered at his trial to demonstrate unlawful possession of a dangerous ordnance and illegal possession of a firearm on liquor permit premises[1] was inadmissible hearsay. Appellant also asserts that our standard of review of this issue is reasonableness.
 {¶ 11} At the commencement of appellant's trial, his counsel made an oral motion in limine to exclude the statements of the unidentified male and female who spoke with the police officers outside the bar. Appellant argued that the statements made by these declarants was inadmissible hearsay. The trial court disagreed and admitted the statements pursuant to Evid.R. 803(2) as excited utterances, an exception to the hearsay rule. Counsel again raised his objection to these statements at the appropriate time during trial; the court overruled these objections.
 {¶ 12} Initially, we note that the admission of a statement as an excited utterance under the Evid.R. 803(2) exception is a matter within the discretion of the trial court. State v.Duncan (1978) 53 Ohio St.2d 215, 219; State v. Kiser, 6th Dist. No. S-03-028, 2005-Ohio-2491, at ¶ 42. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." (Emphasis added.); State v. Adams (1980),62 Ohio St.2d 151, 157 (citations omitted).
 {¶ 13} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Evid.R. 802 states that hearsay is not admissible, except as otherwise constitutionally or statutorily permitted. Evid.R. 803 provides, in pertinent part:
 {¶ 14} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 15} "(1) * * *
 {¶ 16} "(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 17} In Duncan, the Ohio Supreme Court found where a six-year-old victim, still under the domination and nervous excitement of an abusive sex act, related the particulars of the act to her mother at the earliest opportunity, the mother's repetition of such utterances at trial was testimony as to a spontaneous exclamation, and was admissible in evidence as part of the res gestae exception to the hearsay rule. The Duncan
court established a four-part test to determine whether a hearsay statement is admissible under Evid.R. 803(2). Id. at paragraph one of the syllabus, approving and following Potter v. Baker
(1955), 162 Ohio St. 488, paragraph two of the syllabus. Under this test, it must be established that: (1) there was an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have had an opportunity to personally observe the startling event. Id.
 {¶ 18} In the present case, appellant contends that the state failed to establish that the two unidentified witnesses had an opportunity to observe those matters that each asserted in their respective declarations. Therefore, appellant argues that the trial court was unreasonable, that is, abused its discretion, in admitting the hearsay testimony from the two police officers as excited utterances. We disagree.
 {¶ 19} In C. St. L.R. Co. v. Kovatch (1929)120 Ohio St. 532, a nine year old boy was killed by a freight train. Id. at 533. There was some dispute on the question of whether the train actually struck the boy or whether he was caught on a wire located next to the railway tracks and dragged under the train. Id. The Ohio Supreme Court found that, as part of the res gestae, the administrator of the child's estate could testify that immediately after the accident, an unidentified little girl screamed, "the engine runned over David." Id. at 538.
 {¶ 20} In the process of reaching its decision, the court stated: "The more difficult question is whether the statement of a totally unidentified person, with no direct proof of opportunity to observe, may be admitted as part of the res gestae. There is no direct testimony to the fact that the little girl on the corner was the little girl who uttered the scream. There is no direct testimony that the little girl actually saw the accident." Id. at 539. The Ohio Supreme Court answered this question by reciting the undisputed facts of the Kovatch case and holding that under the circumstances there was evidence to justify the inference that at the time of the accident, there was a little girl in the immediate vicinity of the accident who had an opportunity to observe it. Id. at 540.
 {¶ 21} Thus, in applying the excited utterance exception to the hearsay rule, the determination of whether the declarant had the opportunity to personally observe the matter asserted may be implied or inferred from the circumstances of a particular case. See State v. Moorman (1982), 7 Ohio App.3d 251, 252; State v.Clifford, 9th Dist. No. 20871, 2002-Ohio-4531, at ¶ 55, 56, and 57; State v. Beckett (Sept. 7, 2001), 2d Dist. No. 00CA0049,State v. Beckett, 93 Ohio St.3d 1499; State v. Kunkle (Dec. 21, 1990), 2d Dist. No. 2426. This rule was succinctly set forth in State v. Poland (1961), 22 Ill.2d 175, 183, as follows:
 {¶ 22} "We do not understand the requirement to be that the party seeking to have the declaration to be admitted must prove by direct evidence beyond any speculation that the declarant personally observed the matters. If such were the rule, there would hardly ever be a case in which a declaration would be admissible. Rather, we think it is sufficient if it appears inferentially that the declarant personally observed such matters and that there is nothing to make a contrary observance more probable."
 {¶ 23} In the case before this court, it is undisputed that the unidentified man and woman were inside the bar during the relevant time period. The law enforcement officers saw the patrons streaming out of the bar at the same time that this man and woman ran up to the police vehicle and made their separate statements. The male told one officer that the "bouncer was pointing a shotgun at people." The female told the second officer that there was "a male in the bar with a yellow fleece on and he's got a shotgun." When the officers apprehended appellant, a pat down revealed that he had three shotgun shells in his pocket. When Officer Greenwood entered the bar, he saw appellant, who was wearing a yellow fleece vest and was, admittedly, the only bouncer on duty that night. From the unsolicited statements of the declarants, in particular, the statement that the bouncer was pointing a shotgun at people in the bar, and the declarants' proximity to the event, we find that it could be inferred that the unidentified male and female had an opportunity to personally observe appellant in possession of a sawed-off shotgun. Thus, the trial court did not abuse its discretion in admitting their statements as an exception to the hearsay rule, and appellant's first assignment of error is found not well-taken.
 {¶ 24} In his second assignment of error, appellant maintains that the admission of the excited utterances violates his right, as guaranteed by Section 10, Article I, Ohio Constitution, to confront the witnesses who made those statements. Appellant contends that the Confrontation Clause of the Ohio Constitution requires the state to, at the least, show that the witnesses who made these statements were unavailable to present live testimony at appellant's trial.
 {¶ 25} Generally, the admission of evidence at an accused's trial under a firmly rooted hearsay exception, such as an excited utterance, does not violate the Confrontation Clause of theSixth Amendment to the United States Constitution.[2] White v.Illinois (1992), 502 U.S. 346, 356-357. Thus, under White, the state, in a criminal prosecution, is not required to produce the declarant of an excited utterance at trial or to establish the unavailability of the declarant for the purpose of testifying at trial. Id. at 348-349. The Ohio Supreme Court followed this precept in State v. Dever (1992), 64 Ohio St.3d 401, paragraph three of the syllabus (Dever involved the hearsay statements of a child identifying the perpetrator of sexual abuse made).
 {¶ 26} Nevertheless, slightly less than one year later, the Ohio Supreme Court considered whether the Confrontation Clause found in the Ohio Constitution may, in some instances, accord a greater constitutional right to an accused than the Confrontation Clause of the Sixth Amendment to the United States Constitution.State v. Storch (1993), 66 Ohio St.3d 280, 291. The Storch
case involved the alleged sexual abuse of a three year old child by her mother's boyfriend; the sexual abuse supposedly occurred in February 1989. Id. at 281. The child's testimony concerning the identity of the perpetrator of the abuse was allowed into evidence under the medical examination hearsay exception found in Evid.R. 803(4), which does not require a showing of the unavailability of the declarant. Id. at 283-284.
 {¶ 27} In Storch, however, Ohio's high court did not consider whether the child's statement was allowable under Evid.R. 803(4). Instead, the court addressed the question of whether Evid.R. 807, as effective in July 1991, violated the Confrontation Clauses of the United States Constitution and the Ohio Constitution. Id. at 285-286. In its discussion, the court acknowledged, in obiter dictum, that there may be some instances in which the admission of a firmly rooted hearsay exception "may violate our state constitutional right of confrontation." Id. at 291. This finding was premised on language in Section 10, Article I that grants the accused the right "to meet the witnesses face to face." Id. at 292-293. Nonetheless, the central holdings of the Storch court revolved around Evid.R. 807. Id. at paragraphs one and two of the syllabus.
 {¶ 28} This court followed Storch in State v. McWhite
(1993), 91 Ohio App.3d 508, and State v. Ulis (1993),91 Ohio App.3d 656. In both cases, the child victims were found incompetent to testify. McWhite, at 510; Ulis, at 660-661. Therefore, the hearsay statements of the child declarants, who witnessed the murders of their mothers and sisters, were admitted, pursuant to Evid.R. 803(4), through the testimony of a psychologist. McWhite, at 510; Ulis, at 660.
 {¶ 29} In McWhite, we held: "It is the state's duty to establish the unavailability of the child declarant [due to incompetency] before the child's extrajudicial statements can be admitted into evidence." Id. at 512-513 (citations omitted). We therefore reluctantly concluded that the failure to first demonstrate the child declarant's incompetency before admitting his hearsay statements violated the defendant's right of confrontation as set forth in the Ohio Constitution. Id. at 513. For the same reason, we reached an identical conclusion inUlis. Id. at 667. Appellant likens the case before us toMcWhite and Ulis and, thus, asks this court to extend the holding in those cases, as well as Storch, to the present cause. For the following reasons, we decline to do so.
 {¶ 30} First, despite the broad language used in McWhite
and Ulis, the outcome of both of those cases rested upon the failure of the lower courts to determine the competency of a child declarant. Here, we have two adult declarants, whose competency was not challenged, and whose statements were admitted into evidence as firmly rooted hearsay exceptions. Second, in 1997, this court was presented with the question of whether the admission of the hearsay statement of a child declarant, who was allegedly raped by a juvenile, as an excited utterance violated the Confrontation Clauses in both the United States and Ohio Constitutions. In the Matter of James W. (May 16, 1997), 6th Dist. No. E-96-051. We found that unlike hearsay permitted under Evid.R. 807, the Confrontation Clause is automatically satisfied when hearsay evidence is presented under the auspices of Evid.R. 803(2) or 803(4); therefore, "the issue of the declarant's availability is irrelevant * * *." See, also, State v.Williams, 2d Dist. No. 20368, 2005-Ohio-213, at ¶ 17 and 18 (Finding that excited utterances are not violative of Section 10, Article I, Ohio Constitution, because they fit the exceptional circumstances of trustworthiness "for their admission without regard to the availability of the declarant as a witness.").
 {¶ 31} Furthermore, in 1995, the Fourth Appellate District was presented with the issue in the case before us, specifically, whether Section 10, Article I, Ohio Constitution, was violated when the trial court allowed the hearsay statement of a child into evidence as an excited utterance. State v. Johnson (Dec. 26, 1995), 4th Dist. No. 94CA2004, appeal not allowed (1996),76 Ohio St.3d 1405. After discussing Storch, the appellate court determined that the main body of that opinion and paragraph one of the syllabus dealt only with Evid.R. 807 vis-á-vis the Confrontation Clause to the Ohio Constitution. Id. The Johnson
court therefore concluded that Storch did not impose an availability requirement on firmly rooted hearsay exceptions, such as an excited utterance. Id. As a result the court declined to follow the obiter dictum in Storch. Id. See, also, State v.Clifford, 9th Dist. No. 20871, 2002-Ohio-4531, at ¶ 58. We agree with this analysis.
 {¶ 32} Consequently, for all of the reasons stated above, appellant's second assignment of error is found not well-taken.
 {¶ 33} In his third assignment of error, appellant urges that the admission of the hearsay statements of the unidentified male and female into evidence violated his constitutional right, as set forth in the Sixth Amendment to the United States Constitution, to confront those witnesses.
 {¶ 34} The Confrontation Clause to the United States Constitution provides that a defendant in a criminal prosecution has a right to confront the witnesses against him. Until relatively recently, no distinction with regard to whether hearsay admitted into evidence at an accused's trial was testimonial or nontestimonial was considered in deciding alleged violations of the Confrontation Clause. However, in Crawford,
at 68, the United States Supreme Court held: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law * * *. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."
 {¶ 35} The Crawford court declined to delineate a comprehensive definition of the term "testimonial" but provided some guidance by setting forth three possible core classifications of testimonial statements. These were: (1) prior testimony at a preliminary hearing, before a grand jury, or at a former trial; (2) structured police interrogations; and (3) "a statement made under circumstances that would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." Id.
 {¶ 36} The Sixth Circuit Court of Appeals applied the third classification in a case in which a police officer testified as to hearsay statements made by a police informant. U.S. v.Cromer (C.A.6, 2004), 389 F.3d 662, 673, quoting Friedman 
McCormack, Dial-In Testimony (2002), 150 U.Pa.L.Rev. 1240-1241 (A statement is testimonial if it is "`made in circumstances in which a reasonable person would realize that it likely would be used in an investigation or prosecution of a crime.'"). In applying that test, the court decided that the informant's statements were testimonial. Id. at 675.
 {¶ 37} Subsequently, that same court was faced with the question of whether the excited utterances of the victim, which were admitted at the defendant's trial through the testimony of police officers who arrived at the scene as the result of two 911 calls, violated the Confrontation Clause of the Sixth Amendment.State v. Hadley (C.A.6, 2005), 431 F.3d 484. The case involved a dispute between a husband and a wife. Id. at 487. The excited utterances, as spoken by the wife, were "`he has a gun,'" "`he's going to kill me,'" and "`there it is'" (uttered while pointing to the drawer in which the gun was stored). The statements were offered for the truth of the matter asserted at the defendant's trial on a charge of possession of a firearm in violation of18 U.S.C. Section 922(g)(1).
 {¶ 38} Prior to rendering its decision, the Sixth Circuit Court of Appeals further discussed the meaning of a "testimonial statement" under Crawford and Cromer. The Hadley court remarked that Crawford developed the three possible core classifications of testimonial statements. Id. at 499. The court also observed that broadest test was the one applied in Cromer.
Id. at 502.
 {¶ 39} As the first classification was not relevant to the statements made in Hadley, the court initially addressed the issue of whether they were the result of police interrogation, and concluded that they did not fall into that category. Id. TheHadley court then turned to the question of whether the excited utterances made by the victim were testimonial statements "`made in circumstances in which a reasonable person would realize that it likely would be used in investigation or prosecution of a crime.'" Id. quoting Cromer, at 673. In applying this standard, the court provided several reasons in finding that the victim's statements were not testimonial in nature. Id.
 {¶ 40} First, the court analyzed the environment in which the statements were made. Id. at 502-503. The court noted that two 911 calls were made by a third party from the residence where the victim and the defendant were arguing in the bedroom. Id. at 502. The declarant victim was described as hysterical, frightened, and in a state of panic by the officers when they arrived on the scene. Id. at 503. The writing judge opined:
 {¶ 41} "It is highly unlikely, in my view, that a reasonable person in this [emergency] situation would be capable of reflecting upon the prospect that his or her statements might be used in some future criminal proceeding. Rather, the declarant's paramount (if not sole) interest or concern at this point surely would be to secure police assistance and intervention in a dangerous situation that posed an imminent threat to her own safety and well-being." Id.
 {¶ 42} Second, the appellate judge referred to a number of other considerations involving an emergency situation that confirmed his finding. These included the absence of any evidence tending to show that the victim summoned the police, the victim did not display any "mixed motives" that might indicate criminal wrongdoing on the part of her husband, and the police officers did not conduct themselves in such a way as to alert the victim that she was being "interrogated." Id. Finally, the Hadley
court cited numerous federal and state cases that suggested or held that excited utterances made to authorities in emergency situations were not testimonial in nature. Id. 505-506. The factors that the court gleaned from these decisions were (1) an ongoing or recently abated threat to the declarant; (2) whether or not the declarant was the party who initiated the contact with law enforcement; (3) whether the declarant volunteered the information (as opposed to providing the information as the result of a "structured" interrogation by the police); and (4) whether "the information provided reflects a need for immediate aid rather than an intent to precipitate or to assist in a criminal investigation or conclusion." Id. at 505-506 (citations omitted).
 {¶ 43} Here, appellant claims that the excited utterances in this cause "were made knowingly to police officers for the purpose of identifying persons engaged in illegal acts and for the purpose of initiating police action against them." In applying the factors set forth in Hadley, we cannot agree. The police officers in this case were not on the premises of Janet's Old School Bar Grill to investigate any suspected criminal activity within the bar itself. Instead, they were simply sent there for the business of ticketing cars that were illegally parked. The male and female who voluntarily came to the officer's vehicle were panicky, especially the female, and immediately left the scene. The officers also saw a crowd of people leaving the bar; some were shouting that someone had a gun. Both witnesses made voluntary statements to the police concerning an immediate threat posed to themselves and to other bar patrons. Under these circumstances, we cannot say that the excited utterances made by these witnesses are testimonial statements. Therefore, the admission of these statements into evidence at appellant's trial did not violate the Confrontation Clause found in theSixth Amendment to the United States Constitution, and appellant's third assignment of error is found not well-taken.
 {¶ 44} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair hearing, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J. Mark L. Pietrykowski, J. Arlene Singer,P.J. concur.
[1] Appellant was found guilty of violations of R.C. 2923.17(A) and (D) and 2923.121. R.C. 2923.17(A) provides that "no person shall knowingly acquire, have, carry, or use any dangerous ordnance" Section (D) of the statute states that a violation of R.C. 2923.17 is a felony of the fifth degree. R.C. 2923.121(A) prohibits the possession of a firearm on liquor permit premises. It is undisputed that a 12 gauge shotgun is a dangerous ordnance/firearm. See R.C. 2923.11(F) and 2923.11(B)(1). However, in order to prove, beyond a reasonable doubt, that appellant violated these statutes, the state was required to establish, by that same measure of proof, that appellant knowingly acquired, had, carried, used/possessed the dangerous ordnance/firearm.
[2] But, see, Crawford v. Washington (2004), 541 U.S. 36.