DECISION AND JUDGMENT ENTRY
Charles A. Wilson, II, appeals his convictions for one count of felonious sexual penetration, a violation of R.C. 2907.12 (A) (1) (b), and one count of rape, a violation of R.C. 2907.02
(A)(1)(b). He assigns the following errors for our review:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DETERMINING THAT THE ALLEGED VICTIM, A MINOR CHILD UNDER TEN YEARS OF AGE, WAS COMPETENT TO TESTIFY AS A WITNESS AGAINST DEFENDANT-APPELLANT.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN ADMITTING STATE'S EXHIBITS 3 AND 5 INTO EVIDENCE OVER THE OBJECTIONS OF DEFENDANT-APPELLANT.
 THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR A DIRECTED VERDICT.
 FOURTH ASSIGNMENT OF ERROR
 IT WAS ERROR FOR THE TRIAL COURT TO CONVICT AND/OR SENTENCE DEFENDANT-APPELLANT TO TWO SEPARATE CONSECUTIVE SENTENCES.
Finding no reversible error, we affirm the judgment of the Adams County Court of Common Pleas.
 I.
In May 1997, an Adams County grand jury returned an indictment that ultimately charged appellant with one count of felonious sexual penetration and one count of rape, occurring between June 1995 and October 1996. These charges arose after Alexandria Hanson, appellant's former stepdaughter, accused appellant of molesting her. Specifically, Alexandria claimed that appellant inserted his finger into and licked her vagina when she was four or five years old.
At trial, Alexandria testified that appellant digitally penetrated and inserted his tongue into her vagina on more than one occasion. Alexandria stated that she was on the couch in the living room, wearing her nightgown, when appellant removed her underwear and molested her. Alexandria's two brothers were asleep on the living room floor at the time.
Delores Wilson, Alexandria's mother, testified that she first learned of the molestation when Alexandria's behavior changed and she took Alexandria to a psychotherapist, Elaine Harffman. Mrs. Wilson also testified that Alexandria had been sexually expressive since she was one-and-a-half-years-old. In particular, Alexandria wrote on herself with markers "down there," placed Barbie dolls in sexual positions and was caught with a nine-year-old friend with their pants down.
Ms. Harffman testified that Alexandria revealed during a counseling session that she had been sexually abused. Dr. Ann Saluke, a physician at the Social and Medical Clinic ("SAM Clinic") of Children's Hospital in Cincinnati, Ohio, testified that following a physical examination she concluded that Alexandria was likely the victim of sexual abuse.
Defense witnesses testified to incidents of sexual activity involving Alexandria that they had observed. These included an incident where Alexandria inserted crayons into her vagina in her mother's presence and an instance when Alexandria was squatting over a stack toy and appeared as though she would sit directly on top of it. Defense witnesses also testified that Mrs. Wilson previously stated that a sixteen-year-old boy molested Alexandria. When called in the defense case, Mrs. Wilson denied ever seeing Alexandria insert crayons into her vagina or stating that a sixteen-year-old boy had inappropriately touched her daughter.
Appellant testified that he had not sexually abused his stepdaughter.
Following several hours of deliberation, the jury returned a verdict of guilty as to both charges. After appellant was sentenced and classified a sexual predator, he filed this appeal.
 II.
In his first assignment of error, appellant asserts that the trial court erred in determining that Alexandria Hanson, a minor under ten years of age, was competent to testify. Appellant filed a pre-trial motion for a hearing to determine Alexandria's competency. The trial judge conducted an in camera competency interview and this matter proceeded to trial. Appellee argues that appellant made no objection to the trial court's competency finding and, therefore, failed to preserve the issue for appeal. Appellant contends that his motion to conduct a hearing regarding Alexandria's competency was essentially a motion to suppress the testimony of the minor child and any error in the trial court's ruling is preserved for our review.
Whether appellant's first assignment of error has been preserved hinges on whether appellant's motion was a motion inlimine or a motion to suppress. Outside of the OMVI context, a motion to suppress is usually defined as a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of theFourth Amendment (search and seizure), the Fifth Amendment (privilege against self incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation[,] etc.), of U.S. Constitution." State v. French (1995), 72 Ohio St.3d 446, 449, citing Black's Law Dictionary (6 Ed. 1990) 1014. An important characteristic of a motion to suppress is that finality attaches so that the ruling of the court at the suppression hearing prevails at trial and is, therefore, appealable without further action to preserve the issue. Id., citing R.C. 2945.67 (A); Crim.R. 12 (J); see, also, State v. Davidson (1985), 17 Ohio St.3d 132.
A motion in limine is defined as "[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury."French, supra, citing Black's Law Dictionary, supra, at 1013. The purpose of a motion in limine "is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error." Id. at 449-450, citing Black's Law Dictionary at 1013-1014. A ruling on a motion in limine reflects the trial court's anticipated treatment of the issue at trial and, therefore, is a tentative, interlocutory, precautionary ruling.Id. at 450. Accordingly, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted." Id.,
citing Defiance v. Kretz (1991), 60 Ohio St.3d 1, 4 (citation omitted).
Here, appellant's motion was styled as a motion to conduct a competency hearing and not a motion to suppress. However, this factor alone does not preclude us from interpreting the motion as a request for suppression. Rather, we examine the substance of appellant's request. In the motion, appellant asked the trial court to conduct a hearing and determine Alexandria's competency to testify at trial pursuant to Evidence Rule 601 (A) and R.C.2317.01. In a literal sense, the trial judge granted appellant's motion by conducting the hearing.
Appellant did not object to the trial court allowing Alexandria to testify at any point following the interview.[1] It is well-settled that an appellate court need not consider an error to which the complaining party, at a time when such error could have been corrected or avoided, did not direct the trial court's attention. State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, vacated on other grounds (1978),438 U.S. 911; Crim. R. 52 (A). Here, the trial court granted appellant's request to determine Alexandria's competency; any objection to the court's permitting her to testify should have been raised at trial.
In this non-OMVI context, appellant's motion cannot be interpreted as a motion to suppress as it does not address any constitutional issues and deals strictly with an evidentiary issue, i.e. competency. See State v. Morgan (1986), 31 Ohio App.3d 152,154 (stating that the issue of a witness' competence to testify may be likened to other issues of admissibility). Even if we interpret appellant's motion as one requesting that Alexandria not be allowed to testify, the motion would be considered a motion in limine and not a motion to suppress. Therefore, appellant would be required to object at the time the evidence is admitted at trial.
Appellant relies on State v. Ulis (1992), 65 Ohio St.3d 83,85-86, for the proposition that the denial of a motion to suppress testimony of a witness is preserved for appellate review. InUlis, the appellant filed a Crim.R. 12 (B) motion to suppress the testimony of the victim's treating psychologist on the ground that the testimony would be hearsay based on the words of an incompetent declarant and violate appellant's constitutional rights. Id. After denial of his motion by the trial court, appellant pled no contest. Id. The Supreme Court of Ohio held that the ruling was preserved for appellate review because the trial court conducted a full-blown hearing where testimony was elicited upon the constitutional claims that were the subject of the motion, both parties were provided with cross-examination, and the parties stipulated that any error in the trial court's ruling on the motion would be preserved for review. Id. at 86. Further, the trial court treated appellant's motion as a motion to suppress and approved of the stipulation between the parties that the issue would be preserved for appellate review. Id.
We note that several differences exist between the trial court's determination in appellant's case and that in Ulis. Most obviously, in Ulis, the motion was characterized as a motion to suppress and denied, whereas, in this case, the motion was characterized as a motion to conduct a competency hearing and granted by the trial judge. Furthermore, the result was not a full-blown hearing with cross-examination. Rather, the trial judge conducted an in camera interview without counsel's presence. Finally, the trial court never indicated to appellant that the issue was preserved for appeal; defense counsel had ample opportunity to object to the trial court's competency finding if he felt it was erroneous. For these reasons, we find that Ulis does not support appellant's contention that the issue of Alexandria's competency is preserved for appeal.
As appellant failed to object to the trial court's competency determination, we must determine whether the trial court committed plain error in finding Alexandria competent and allowing her to testify at trial. Plain error is reversible error to which no objection was lodged at trial; it is obvious and prejudicial, and if permitted it would have a material adverse effect on the character and public confidence in judicial proceedings. State v. Craft (1977), 52 Ohio App.2d 1, 7. See, also, Crim. R. 52 (B). Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
Evid.R. 601 provides that "[e]very person is competent to be a witness except: (A) * * * children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." It is the trial judge's duty to voir dire a child under the age of ten to determine the child's competency to testify. The determination of competency is within the sound discretion of the trial judge as the judge has the opportunity to observe the child's appearance, manner of responding to the questions, general demeanor and other indicia of ability to relate the facts accurately and truthfully. Accordingly, the court must determine whether the child is capable of receiving just impressions of facts and events and accurately relating them. See State v. Frazier (1991), 61 Ohio St.3d 247, 251.
In Frazier, the Supreme Court of Ohio established a test for determining the competency of a child under the age of ten to testify. The Court stated that:
 In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.
Id. at 251.
During the competency interview, Alexandria knew her age, her birthday, that she was in first grade and that she had two brothers, a stepbrother and a stepsister. She knew the ages of her siblings, except for her stepbrother, and where each of her siblings resided. Alexandria indicated that she lived with her mother and her brothers, Zachary and Andrew. When the trial judge asked whether Alexandria remembered the doctor's name, Alexandria corrected the trial judge and stated that it was a female doctor but she did not recall her name. Alexandria further stated that the doctor gave her tests by herself and then her mother came in and they talked together with the doctor. When asked if her mom helped her remember things, Alexandria stated that "[s]he forgot and I remembered." She did not know how long ago the events had happened and stated that she was "only like six when he done it." Alexandria indicated that no one else ever touched her "there" and that appellant had also put his tongue "there."
Appellant contends that none of the criteria of the Frazier
test were satisfied by the judge's voir dire. While Alexandria could not answer all the trial judge's questions, we believe that Alexandria demonstrated an ability to receive accurate impressions of fact, could recollect those impressions and observations, and communicate what she observed. However, the trial judge erred in failing to question Alexandria regarding her understanding of truth and falsity or her appreciation of her responsibility to be truthful. Therefore, we must determine whether this oversight resulted in a manifest miscarriage of justice.
At trial, appellee questioned Alexandria regarding her understanding of truthfulness. Appellee asked Alexandria what a promise is and Alexandria replied that, "[a] promise is to not tell people * * * like if there's a stranger * * * who tells you not to do something, and you tell anyways, that's a promise * * *." Clearly, Alexandria was confusing a promise and a secret. Appellee then asked Alexandria whether, if she promised not to tell and then went out and told, she would be keeping a promise or breaking a promise. Alexandria stated that she would be breaking her promise. Appellee asked Alexandria if she was going to tell the truth and Alexandria responded affirmatively. When asked, "If you didn't tell the truth, what would that be about your promise?", Alexandria responded that she would be lying.
In State v. Lewis (1982), 4 Ohio App.3d 275, the Third District held that any doubt regarding competency could be eliminated by subsequent testimony which justified a finding that the child is competent to testify. We agree with this rationale and believe that appellee's direct examination was sufficient to establish that Alexandria understood truth and falsity. While Alexandria was obviously confused when asked to define a promise, it is equally clear that she could identify the difference between truth and a lie and appreciated that she was required to tell the truth. Because the trial court's error was cured by subsequent events, it does not have a material adverse effect on the character and public confidence in judicial proceedings. Thus, we find no plain error.
Appellant argues that inconsistencies in Alexandria's testimony demonstrate her incompetence. Inconsistency relates to Alexandria's credibility and not her competency as a witness. The jury had the opportunity to observe Alexandria and determine how much credence and weight should be given to her testimony.
Therefore, we overrule appellant's first assignment of error.
 III.
In his second assignment of error, appellant argues that the trial court erred in admitting State's Exhibit 5, a diagnostic assessment prepared by Elaine Harffman, and State's Exhibit 3, an examination report from the SAM Clinic prepared by Amy Herbert.
Questions regarding the admissibility of evidence are left to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion. State v.Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion will be found only if the trial court's attitude was unreasonable, arbitrary or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 157.
The trial court found that both exhibits were admissible pursuant to Evid.R. 803 (4), which states that a hearsay statement is admissible if it is "made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis." Statements which are admissible under Evid.R. 803 (4) are assumed to be reliable since (1) the effectiveness of treatment often depends upon the accuracy of the information related to the physician (self-interest motivation), and (2) the expertise of doctors in evaluating the accuracy of those statements is a safeguard against falsehoods (reliance rationale). See State v. Dever
(1992), 64 Ohio St.3d 401.
However, when the patient is a young child, it is not certain that the child understands the need to be truthful to medical personnel. Id. Consequently, the Ohio Supreme Court held that in the case of young children, courts must consider the circumstances surrounding the making of statements to a medical professional before admitting those statements under Evid.R. 803 (4). Id. The Supreme Court went on to state that
 a court should not presume * * * that the statements are unreliable merely because there is no indisputable evidence of the child's motivation. Rather, in a case such as this, when an examination of the surrounding circumstances casts little doubt on the motivation of the child, it is permissible to assume that the factors underlying Evid.R. 803 (4) are present.
Id. at 410-12. In sum, the court may admit a child's statements if they are made for purposes of medical diagnosis or treatment and there is no evidence to cast doubt upon the child's motivation for making the statements.
Appellant objects to the admissibility of these two exhibits on several grounds. First, appellant argues that it was error to admit State's Exhibit 5 because the trial court limited defense counsel in his cross-examination of Elaine Harffman and expressly stated that Exhibit 5 would not be admitted. We agree with appellant that the trial court was, at best, unclear regarding the admissibility of State's Exhibit 5 during cross-examination of Ms. Harffman. However, if appellant was concerned that he was unfairly limited in his cross-examination, he could have requested permission to recall the witness and continued his cross or recalled Ms. Harffman as an adverse witness in his case-in-chief. As appellant did neither, he was not denied his right to confront the witness regarding the exhibit.
Appellant further contends that neither exhibit should have been admitted because Ms. Harffman is not a medical expert or a doctor and there was no testimony regarding the qualifications of Amy Herbert, who prepared State's Exhibit 3.
Evid.R. 803 (4) does not require that the statements be made to a specific type of health care provider as long as made for purposes of diagnosis or treatment. Thus, a statement may still be within the scope of the exception if it is directed to other physical and mental health professionals, including nurses, psychiatrists, psychologists, and therapists. State v. Chappell
(1994), 97 Ohio App.3d 515, 530. Furthermore, because Evid.R. 803 (4) is not limited to statements relating to physical condition, statements made during the course of a psychological examination may also be admissible provided that the purpose of the examination is to diagnose or treat the victim's psychological condition. See State v. Vaughn (1995), 106 Ohio App.3d 775, 780;State v. McWhite (1991), 73 Ohio App.3d 323, 329-330.
Ms. Harffman testified that she is a licensed social worker who was employed as a psychotherapist and was diagnosing and treating Alexandria for her psychological condition. As to State's Exhibit 3, there was testimony from Ms. Herbert that she was employed as a graduate intern at the SAM Clinic and that her duties were to interview Alexandria and then discuss Alexandria's statements with the doctor for purposes of her examination. Furthermore, State's Exhibit 3 includes Ms. Herbert's signature followed by the letters LSW, which indicates that Ms. Herbert is a licensed social worker. See State v. Dumas (Feb. 19, 1999), Franklin App. No. 98AP-581, unreported (holding that statements made to a social worker whose duty was to interview children and provide the information to the medical staff were admissible pursuant to Evid.R. 803 (4)). Ms. Herbert was acting as part of the medical team for purposes of treating Alexandria. Both Ms. Harffman and Ms. Herbert are licensed social workers who were diagnosing and treating Alexandria. The fact that they are not medical doctors does not per se require exclusion of the reports.
Appellant also argues that the trial court erred in failing to make a determination as to Alexandria's competency at the time she made the statements to Ms. Harffman and Ms. Herbert. There is, however, no requirement that the court make such a determination. State v. Ulis (1993), 91 Ohio App.3d 656, 665
(stating that Ohio courts have previously ruled that Evid.R. 803 (4) has no prerequisite of determining whether the declarant is competent to testify). Accordingly, Alexandria's statements to Ms. Harffman and Ms. Herbert could be admitted pursuant to Evid.R. 803 (4) without a ruling on Alexandria's competency.
We do note, however, that the trial court must determine whether there are facts which impugn the child's motivations such that her statements should not be admitted pursuant to Evid.R. 803 (4). Dever, supra, at 412. Here, Ms. Herbert testified that part of her duties were to explain to the child what would happen that day and then interview the child to collect information for the medical examination. Therefore, there is sufficient evidence to support the trial court's finding that Alexandria understood that the statements she made were for the purpose of medical treatment. Further, there was no evidence that Alexandria was unduly influenced when she made the statements to Ms. Herbert.
As to State's Exhibit 5, Ms. Harffman testified that Mrs. Wilson brought Alexandria in to speak to her due to several behavioral changes. Neither party questioned Ms. Harffman as to whether she explained to Alexandria the purpose of her visit. Appellant cross-examined Mrs. Wilson regarding her divorce from appellant and introduced testimony regarding Mrs. Wilson's mental condition. However, we believe that the lack of evidence indicating undue influence on Alexandria is adequate to support the trial court's determination that the exhibits were sufficiently trustworthy pursuant to Dever.
Lastly, we address appellant's argument that portions of State's Exhibit 5 should have been excluded as they were not made for purposes of diagnosis or treatment or were unduly prejudicial. Specifically, appellant refers to statements indicating that appellant sexually molested Alexandria, that appellant had previously been charged with domestic assault, an anecdotal overview of Alexandria's condition and statements indicating that Alexandria is a sexual abuse victim, implying that she was speaking truthfully in accusing appellant of sexually assaulting her.
While statements of fault generally fail to meet the criteria for admission under Evid.R. 803 (4), statements by a child abuse victim that the abuser is a member of the victim's household are reasonably pertinent to diagnosis and treatment. State v. Miller
(1988), 43 Ohio App.3d 44, 47, citing United States v. Renville
(C.A.8, 1985), 779 F.2d 430, 436, 438. Familial child abuse involves more than physical injury as the identity of the offender might be necessary for psychological diagnosis and treatment. Miller, supra, at 47. As appellant was Alexandria's step-father, the admission of Alexandria's statements to Ms. Harffman indicating that appellant had sexually abused her was not improper.
Appellant also argues that a portion of State's Exhibit 5 stating that "there have been domestic violence charges against the step-father during the summer of 1996 due to an episode when he grabbed Alex by the neck and shoved her mother and bruised her mother and choked her" should have been excluded. We agree that the trial court should not have allowed this section of the report to go to the jury. We conclude, however, that this error was harmless beyond a reasonable doubt in light of the admissible evidence presented to the jury.
While we are also troubled by the admission of references to Alexandria as a sexual abuse victim and an overview of Alexandria's condition, we do not believe they require reversal. Appellant contends that the tone of the report and Ms. Harffman's classification of Alexandria as a sexual abuse victim indicate that Ms. Harffman believed Alexandria was telling the truth. InState v. Boston (1989), 46 Ohio St.3d 108, 128, the Supreme Court held that an expert can testify as to whether a child was sexually abused but cannot testify as to whether a child is testifying truthfully. In so distinguishing, the Court indicated that testimony confirming a child had been abused does not equate to testimony that a child was truthful. Therefore, Ms. Harffman's classification of Alexandria as a sexual abuse victim or other statements in State's Exhibit 5 do not violate the prohibition on testimony regarding a witness' credibility. This portion of State's Exhibit 5, however, is not admissible under Evid.R. 803 (4) as it is the psychotherapist's diagnosis and not a statement of the patient made for purposes of diagnosis or treatment; nor is it admissible under Evid.R. 803 (6), the business records exception which does not provide for the admission of diagnoses and opinions. See Bush v. Burchett (June 13, 1995), Scioto App. No. 94CA2237, unreported. Nonetheless, their admission does not require reversal. The references in Exhibit 5 to Alexandria's status as a victim of sexual abuse were cumulative in light of similar properly admitted testimony from Dr. Saluke.
Therefore, we overrule appellant's second assignment of error.
 IV.
In his third assignment of error, appellant alleges that the trial court erred in overruling appellant's motion for a directed verdict. Specifically, appellant avers that the evidence was insufficient to support a conviction beyond a reasonable doubt and/or the manifest weight of the evidence does not support a conviction beyond a reasonable doubt.
The "sufficiency" of evidence refers to the legal standard applied to determine whether the case may go to the jury, i.e. whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386. This is a question of law which we review denovo. See id. In analyzing the "sufficiency" of evidence to sustain a criminal conviction, an appellate court must construe the evidence in a light most favorable to the prosecution. Statev. Hill (1996), 75 Ohio St.3d 195, 205; State v. Grant (1993),67 Ohio St.3d 465, 477; State v. Rojas (1992), 64 Ohio St.3d 131,139. After construing the evidence in this manner, the test for determining the sufficiency is whether any rational trier of fact considering the evidence could have found all essential elements of the charged offenses proven beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Appellant questions Alexandria's credibility and urges us to find the evidence insufficient to support a conviction. We note, however, that a sufficiency of the evidence analysis is a question of law that does not allow courts to independently weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Evaluations of weight and credibility are jury issues. State v.Hill, supra, at 205. Accordingly, our inquiry is not whether Alexandria's testimony should have been believed but, rather, whether it would support a conviction if believed by the jury. See Thompkins, supra, at 390 (Cook, J., concurring). Mrs. Wilson testified to Alexandria's age and Alexandria testified that appellant sexually assaulted her by inserting his tongue and his finger into her vagina on more than one occasion. Construing the evidence most favorably for the prosecution, this testimony established each element of both charges against appellant. The evidence was legally sufficient, leaving it up to the jury to decide whether it was credible.
Appellant also argues that his conviction is not supported by the manifest weight of the evidence. While a "sufficiency" challenge tests whether a state's case is legally adequate to go to the jury, a "weight" of the evidence argument concerns the "rational persuasiveness" of the evidence and tests whether the evidence was enough to sustain the state's burden of proof. SeeState v. Thompkins, supra, at 386-87; see, also, State v. Martin,supra, at 175.
Our role in a manifest weight of the evidence inquiry is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180,193. To make this determination, we must "review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." State v.Stepp (1997), 117 Ohio App.3d 561, 567. If the record contains substantial evidence upon which a trier of fact could conclude that the state proved its case beyond a reasonable doubt, we will not reverse a conviction. Getsy, supra, at 193-94; State v.Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
Appellant's argument primarily focuses on Alexandria's credibility, Alexandria's uncertainty as to certain details such as where she was residing when the abuse occurred and Mrs. Wilson's alleged motivation to convince Alexandria to lie. Appellant also relies on the testimony of several witnesses who indicated that Alexandria had a prior history of "sexual activity." Even though a manifest weight of the evidence challenge requires us to review the record and weigh the evidence, our review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v. Garrow (1995), 103 Ohio App.3d 368, 371. In this case, the jury's verdict conclusively shows that it found Alexandria to be a credible witness and did not believe that Mrs. Wilson had coerced Alexandria into falsely accusing appellant. If the jury did not find Alexandria credible and believed Ms. Wilson had coaxed Alexandria into lying, it would have undoubtedly acquitted appellant. We refuse to second-guess a jury's determination of a witness' credibility when the jury was able to observe the witness firsthand. To do so on this record would be an inappropriate usurpation of the jury's role. We overrule the third assignment of error.
 V.
In his final assignment of error, appellant challenges the imposition of consecutive sentences for felonious sexual penetration and rape. Appellant contends that consecutive sentencing for these offenses violates constitutional and statutory proscriptions of multiple punishments for the same offense. We conduct a de novo review of these issues.
The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution protect against multiple punishments being imposed upon an accused for the same offense. See North Carolina v.Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; Statev. Thomas (1980), 61 Ohio St.2d 254, 259-60, overruled on other grounds in State v. Crago (1990), 53 Ohio St.3d 243. Moreover, R.C. 2941.25, the "multiple-count statute," codifies Double Jeopardy principles by prohibiting multiple punishments for the same criminal conduct in violation of the state and federal constitutions. Thomas, 61 Ohio St.2d at 260.
R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Appellant contends that the trial court impermissibly sentenced him to consecutive terms for felonious sexual penetration and rape because those two crimes are allied offenses of similar import within the meaning of R.C. 2941.25.
In a recent decision, the Ohio Supreme Court clarified the test used to determine whether two crimes are allied offenses of similar import. State v. Rance (1999), 85 Ohio St.3d 632. The Court found that the State of Ohio intends to permit a defendant to be punished for multiple offenses of dissimilar import. Id. at 636. The applicable test for deciding whether the crimes are allied offenses of similar import is: If the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" Id., citing State v. Jones
(1997), 78 Ohio St.3d 12, 13-14. If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted. Id.
The statutory elements of the crime must be considered in the abstract and the court need not consider the particular facts of the case. Id. If the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id.
Here, appellant was convicted of felonious sexual penetration in violation of R.C. 2907.12 (A) (1) (b)[2] which states that:
 No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
Appellant was also convicted of rape in violation of R.C.2907.02 (A) (1) (b) which states:
 No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
R.C. 2907.01 (A) defines "sexual conduct" as "vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunningulus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
Applying the Supreme Court standard outlined in Rance, we find that felonious sexual penetration and rape are not allied offenses of similar import. While many of the elements are identical, the commission of one of the crimes will not necessarily result in the commission of the other when the offenses are examined in the abstract. For example, insertion of a non-anatomical object could be a violation of R.C. 2907.12 but does not satisfy the definition of sexual conduct and, consequently, could not be a violation of R.C. 2907.02.
We also note that Alexandria testified that appellant performed these acts on more than one occasion. Therefore, there was sufficient evidence for the jury to determine that appellant committed rape on one occasion and felonious sexual penetration on another date. Even absent the Rance analysis above, sufficient evidence exists to uphold both convictions based on Alexandria's testimony.
Having found that appellant's double jeopardy rights have not been violated, appellant's fourth assignment of error is overruled.
Having found no reversible error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J.: Concurs in Judgment and Opinion as to Assignment of Error IV; concurs in Judgment only as to Assignments of Error I, II and III.
Evans, J.: Concurs in Judgment and Opinion.
For the Court
 BY: ________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] We note that there is no finding of competency in the record. However, given that a pre-trial motion pertaining to the manner in which Alexandria would testify at trial was filed after the competency hearing and that Alexandria actually testified at trial, it is evident that the trial court determined that Alexandria was competent.
[2] We note that R.C. 2907.12 was repealed by Am.H.B. No. 445, effective September 3, 1996. Appellant was convicted of committing these crimes between June 1995 and October 1996. As of September 3, 1996, appellant's actions would still constitute a crime under R.C. 2907.02 which expands the definition of rape to include acts previously constituting felonious sexual penetration. Because appellant would be guilty of two sexual offenses regardless of whether the incident occurred before or after September 3, 1996 and because the crimes are effectively the same, we find this change is not relevant to our analysis.