DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant Edward Brewer appeals his conviction and sentence by the Erie County Court of Common Pleas following a jury verdict finding Brewer guilty of rape. Because appellant's conviction was supported by the evidence and the judge sentenced appellant in conformity with the law, we affirm.
On June 27, 1998, Phyllis Ferback was a patient at Providence Hospital in Sandusky, Ohio. Ferback had received chemotherapy for esophageal cancer and was too sick to return to the nursing home where she resided. She had cerebral palsy which left her unable to move her legs and permitted only gross motor movement of her arms. Ferback also had learning disabilities and could not read nor write. She was described as having less than a first grade education but being more advanced socially.
 {¶ 2} Around 9:30 p.m., nurse Anna Meyer administered a dose of Demerol, a pain medication, to Ferback. At that time, Ferback had a visitor who was later identified to be Brewer. When the nurse left the room, she left the door open. A short time thereafter, nurse assistants Rhonda Dabney and Christine Gottfried went to Ferback's room on care rounds to get Ferback ready for bed. The door was closed, so Dabney knocked and pushed the door open. Immediately upon entering the room the assistants saw Brewer with his pants around his ankles crouching/kneeling between Ferback's spread legs. The bed sheet was down at the foot of the bed and Ferback's nightgown was just below her breasts. She was not wearing underpants. The assistants left the room to tell Meyer what was happening.
 {¶ 3} Meyer returned to Ferback's room. This time Brewer was lying on top of Ferback, her legs still spread apart. Meyer also noted that Brewer's pants were pulled down and that Ferback's gown was pulled up. After asking Ferback if she was comfortable, Meyer told Brewer that he needed to get dressed and leave. Meyer then left Ferback's room to call security to escort Brewer out of the hospital.
The Sandusky police department was notified of the incident two days later on June 29, 1998. A rape kit was used at that time, but was negative for the presence of any hairs or semen. In October 1998, Ferback died of unrelated causes.
 {¶ 4} On June 14, 1999, Brewer was indicted on one count of rape, in violation of R.C. 2907.02(A)(1)(c), and one count of sexual battery, in violation of R.C. 2907.03(A)(2). In November 1999, Brewer entered into a plea agreement whereby he agreed to plead guilty to sexual battery upon dismissal of the rape count. At the sentencing hearing, Brewer moved to withdraw his guilty plea. The trial court denied Brewer's motion without hearing, sentenced him to prison for five years, and classified him as a sexually oriented offender. This court reversed Brewer's conviction, concluding that the trial court erred when it failed to conduct a hearing on Brewer's motion to withdraw his plea agreement. See State v. Brewer,
(Feb. 16, 2001), Erie App. No. E-00-003.
 {¶ 5} On remand, the state did not contest Brewer's motion to withdraw his plea agreement, and the matter was set for jury trial. The trial court charged the jury on the elements of rape and sexual battery as well as the lesser included offenses of attempted rape and attempted sexual battery. The jury returned guilty verdicts on rape and sexual battery. At sentencing, the trial court merged the rape and sexual battery counts. Brewer was sentenced to ten years for rape and was classified as a sexual predator.
 {¶ 6} Brewer now raises the six following assignments of error:
 {¶ 7} "I. The court erred in admitting the unreliable hearsay statement of an incompetent witness."
"II. The court erred in admitting the hearsay statement of an unavailable incompetent witness."
 {¶ 8} "III. The court erred in denying defendant's motion for acquittal because of insufficient evidence to prove physical contact between defendant and the victim."
 {¶ 9} "IV. The jury's verdict was against the manifest weight of the evidence."
 {¶ 10} "V. The court erred in classifying defendant as a sexual predator when it had previously classified him as a sexual offender."
 {¶ 11} "VI. The trial court abused its discretion by imposing the maximum sentence."
 {¶ 12} In his first and second assignments of error, appellant contends that the court erred in admitting the hearsay testimony of Nurse Meyer.
 {¶ 13} It is well settled that a trial court has broad discretion in the admission of evidence. State v. Robb (2000), 88 Ohio St.3d 59,68. Decisions regarding the admission or exclusion of evidence will not be disturbed absent an abuse of that discretion. State v. Graham (1979),58 Ohio St.2d 350, 352. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 14} The Rules of Evidence prohibit the use of hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is admissible only if it meets one of the exceptions enumerated in the Rules of Evidence. Evid.R. 802. One of those exceptions is described in Evid.R. 803(4) which provides that the following type of statements are not excluded by the hearsay rule even though the declarant is available as a witness: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The rule has been interpreted to include diagnosis and treatment of psychological injuries as well as physical ailments. Statev. McWhite (1991), 73 Ohio App.3d 323. In determining whether or not to admit certain statements pursuant to Evid.R. 803(4), the trial court should consider the unique circumstances surrounding the making of the hearsay statement and the effect various factors may have had on the reliability of the statement. State v. Dever (1992), 64 Ohio St.3d 401,410-411. Should the trial court choose to admit hearsay statements pursuant to Evid.R. 803(4), the credibility of the statements would then be for the jury to evaluate in its role as fact-finder. Id.
 {¶ 15} Anna Meyer testified that she has been a registered nurse for over 18 years. She testified that she had experience in dealing with mentally challenged patients. Meyer explained that mentally challenged patients have their own language, and that once a care giver comes to understand the language they can successfully communicate with the patient. Meyer testified that she could successfully communicate with Phyllis Ferback. On June 27, 1998, Meyer went to Ferback's room after being alerted by the nurse assistants. She walked in and saw Brewer laying on top of Ferback. Meyer testified that she asked the victim if she was okay and the victim replied "yes." Meyer asked the victim if the situation was acceptable to her and the victim replied "no." Meyer then told Brewer to leave. After Brewer was escorted from the hospital, Meyer again questioned Ferback. Meyer testified:
 {¶ 16} "I asked her if she was hurting anywhere, and she said, no, she was okay. * * *
 {¶ 17} "prosecutor: Did you ask her what happened to her?
 {¶ 18} "Meyer: Yes, I did.
 {¶ 19} "prosecutor: And can you tell the jury, what did you ask her?
 {¶ 20} "Meyer: In the course of the conversation, I explained that I needed to know that she was all right. My words to her were, `Was he in?' And she looked straight at me and said, `Yes.'" Defense counsel objected to this testimony. The trial judge overruled the objection.
 {¶ 21} The prosecutor then asked Meyer what she meant when she asked "was he in ?" Nurse Meyer testified:"I meant, had he penetrated?" Meyer then explained that she phrased the question in such a way as to "put it in her communication level." Meyer added: "She appeared to understand very clearly what I meant." When the prosecutor asked Nurse Meyer why she questioned Ferback, Meyer stated that given what she had witnessed in the room, she needed to know if Ferback had been injured. Meyer stated that if Ferback had been injured it was her responsibility to get her medical attention.
Though Ferback refused to go to the emergency room, Meyer testified it was because she did not want her mother to find out what had happened to her.
 {¶ 22} Brewer argues that Evid.R. 803(4) does not apply since Ferback refused to go to the emergency room. We disagree. For purposes of this analysis, Ferback's choice not to go to the emergency room is irrelevant. Evid.R. 803(4) does not require the declarant to receive treatment. Evid.R. 803(4) merely requires that the statements be made for purposes of medical diagnosis or treatment. Nurse Meyer clearly testified that she elicited statements from Ferback in an effort to determine whether or not she needed medical treatment. Moreover, we note that the hearsay exception for statements pertinent to medical treatment "* * * is based upon the belief that the declarant's subjective motive generally guarantees the statement's trustworthiness. Since the effectiveness of the treatment depends upon the accuracy of information given to the physician, the declarant is motivated to tell the truth." State v.Eastham (1988), 39 Ohio St.3d 307, 312 (H. Brown, J., concurring). Ferback's willingness to tell Nurse Meyer what happened while hoping to keep the incident secret from her family and most likely others makes her statements even more trustworthy.
 {¶ 23} Brewer also argues that the trial court erred in failing to make a determination as to Ferback's competency at the time she made the statements to Nurse Meyer. However, "[O]hio courts have previously ruled that Evid.R. 803(4) has no prerequisite of determining whether the declarant is competent to testify." State v. Ulis (1993),91 Ohio App.3d 656, 665; State v. Miller (1988), 43 Ohio App.3d 44, 46;State v. Ashford (Feb. 16, 2001), Trumbull App. No 99-T-0015; State v.Wilson (Feb. 18, 2000), Adams App. No. 99CA672; State v. McWhite (Dec. 29, 1995), Lucas App. No. L-95-007; State v. Valdez (Nov. 29, 1991), Ottawa App. No. 90-OT-014.
 {¶ 24} In sum, Ferback's statements were made in a hospital to an individual she knew to be a medical professional entrusted with her care. Nurse Meyer testified that her questions were purposely geared toward finding out whether or not Ferback needed medical treatment. The record shows that Ferback refused treatment out of fear of upsetting her mother, not because she was not injured. Given the facts and circumstances of this case, the trial court did not err in concluding that Ferback's statements were admissible as hearsay exceptions pursuant to Evid.R. 803(4). Brewer's first and second assignments of error are found not well taken.
 {¶ 25} In his third of assignment of error, Brewer challenges the sufficiency of the evidence to convict him, specifically evidence of penetration, an integral part of the element of sexual conduct.
 {¶ 26} Brewer moved for a judgment of acquittal on the rape and sexual battery counts at the close of the state's case. After the trial court denied his motion, Brewer presented the testimony of his two witnesses. He did not renew his Crim.R. 29 motion at the close of all evidence. Brewer, therefore, waived any error regarding the sufficiency of the evidence. State v. Wohlgamuth, 6th Dist. No. WD-01-012,2001 Ohio 3103 at ¶ 12; State v. Stevenson (July 21, 2000), 6th Dist. No. E-94-002.
Even though Brewer failed to preserve this issue for appeal, after reviewing his argument, we conclude nevertheless that there was evidence sufficient to go to the jury. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court is to examine the evidence admitted at trial to determine whether, if believed, it would convince a trier of fact of a defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 27} Brewer was charged with two separate crimes involving sexual activity. The rape statute under R.C. 2907.02(A)(1)(c) provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age." The sexual battery statute under R.C. 2907.03(A)(2) provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."
Both crimes contain the element of sexual conduct. Sexual conduct is defined in R.C. 2907.01(A) as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 28} In this case, evidence of penetration was admitted in the form of Ferback's statements to Meyer and the testimony of Dabney regarding the appearance of Ferback's vaginal area. When this evidence is viewed most favorably for the state, an inference may be made that vaginal intercourse occurred. This evidence was sufficient for reasonable minds to consider whether Brewer engaged in vaginal intercourse with Ferback. Brewer's third assignment of error is not well taken.
 {¶ 29} In his fourth assignment of error, Brewer argues that the jury's verdict was against the manifest weight of the evidence. This concept differs from that of sufficiency of the evidence. Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
"When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citingTibbs v. Florida (1982), 457 U.S. 21, 42.
 {¶ 30} To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only if we conclude that the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
 {¶ 31} Brewer contends that there is no evidence that he engaged in sexual conduct with Ferback. We disagree. As discussed in Brewer's first two assignments of error, evidence was properly admitted in the form of Nurse Meyer's testimony showing that Ferback had been vaginally penetrated by Brewer. Ted J. Manasian, an expert witnesses from the Ohio Bureau of Criminal Identification and Investigation who inspected the rape kit that was administered to Ferback two days after the incident, testified that although the kit was negative for the presence of hairs or semen, this did not necessarily mean that Ferback had not been raped. After a thorough review of the record in this case, we cannot conclude that the jury lost its way and created a miscarriage of justice. Brewer's fourth assignment of error if found not well taken.
 {¶ 32} In his fifth assignment of error, Brewer contends that the evidence presented at his sexual predator hearing was insufficient to support a finding that he is a sexual predator.
A "sexual predator" is someone who has been convicted of or pleaded guilty to a sexually oriented offense "and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). A "sexually oriented offense" includes rape. R.C. 2950.01(D)(1). Consequently, the trial court was required to determine appellant's classification pursuant to R.C. 2950.09(B)(1). Pursuant to this statute, a trial court may designate the offender as a predator, but it may do so only after holding a hearing where the prosecutor and offender have the opportunity to testify and to call and cross-examine witnesses. R.C.2950.09(B)(1).
 {¶ 33} R.C. 2950.09(B)(2) sets forth the following non-exhaustive list of factors that, if relevant, the trial court must consider in determining whether someone is a sexual predator:
 {¶ 34} "(a) The offender's age;
 {¶ 35} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 36} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 37} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 38} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
"(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 39} "(g) Any mental illness or mental disability of the offender;
 {¶ 40} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 41} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 42} "(j) Any additional behavioral characteristics that contribute to the offender's conduct."
 {¶ 43} The standard for determining whether an offender is a sexual predator is by clear and convincing evidence. R.C. 2950.09(B)(3);State v. Cook (1998), 83 Ohio St.3d 404, 423-424. "Clear and convincing" evidence is that degree of proof which is sufficient to establish in the mind of the trier of fact a "firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
At the sexual predator hearing, evidence was presented showing that Brewer was Ferback's uncle. The state offered evidence of appellant's lengthy criminal record spanning 20 years which included convictions for seven felonies. Patricia Luck testified that Ferback was her sister. On the evening of June 27, 1998, she was called to the hospital after Brewer was escorted out. When comforting Ferback, Ferback told her that she had been raped before by Brewer. Nurse Meyer testified that Ferback told her that Brewer had been raping her for a number of years. According to Meyer, Ferback only told her deceased husband about the assaults. Brewer presented no witnesses but testified that he was not guilty of raping Ferback.
 {¶ 44} In rendering its decision finding Brewer to be a sexual predator, the trial court took the following facts into consideration: (1) Ferback was Brewer's niece, (2) Brewer has a lengthy criminal record, (3) witnesses testified that Brewer smelled like alcohol when he was at the hospital, and (4) Ferback's physical and mental limitations. Based on the evidence presented, we find that the trial court was justified in finding Brewer was proven to be a sexual predator by clear and convincing evidence. Appellant's fifth assignment of error is found not well-taken.
 {¶ 45} In his sixth and final assignment of error, Brewer contends that the court abused its discretion in sentencing him to ten years in prison. Brewer does not challenge the court's authority to sentence him to ten years based on the requirements of this state's felony sentencing statutes contained in R.C. 2929.11 to 2929.19. Rather, Brewer contends that because he was sentenced to five years for sexual battery, a third degree felony, when he initially entered into a plea agreement in 1999, the court abused its discretion in doubling his sentence after a new trial following this court's reversal of his 1999 conviction.
 {¶ 46} Brewer's argument is without merit. Brewer chose to withdraw his plea which ultimately resulted in a new trial. A jury then convicted him of the more serious offense of rape, a first degree felony. A trial judge is under no obligation, legal or otherwise, to impose the same sentence on two different charges arising from the same incident. Brewer's sixth assignment of error is found not well taken.
 {¶ 47} On consideration whereof, the court finds that appellant was not prejudiced nor prevented from having a fair trial, and the judgment of the Erie County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Mark L. Pietrykowski, J. and Arlene Singer, J., CONCUR.
Judith Ann Lanzinger, J., dissents.